IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NIA LUCAS and A.M., *a minor by and through* )
   *his Guardian ad Litem, Nia Lucas*,   )
                                               )
   *Plaintiffs*,                              )
                                             )
   v.                                     )   Case No. 1:22-cv-00987 (PTG/JFA)
                                             )
VHC Health, *et al.*,              )
                                           )
   *Defendants*.               )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. 6–7. Plaintiffs Nia Lucas and her minor child, A.M., who are proceeding *pro se*, bring this action under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42, U.S.C. § 18116, alleging disability discrimination and retaliation. Dkt. 1 ("Compl.") at 16–21.[1] Defendants moved to dismiss this action, arguing that, amongst other things, Plaintiff A.M.'s claims fail for lack of standing and Plaintiff Nia Lucas' claims fail to state a claim as to any of the cited statutes as a matter of law. Dkt. 7 at 1–3. Plaintiff sent Defendants a Response (Dkt. 21), which Defendants subsequently filed with the Court, and Defendants filed a Reply (Dkt. 15). On June 14, 2023, Plaintiff filed an additional brief, stylized as an Opposition. Dkt. 26.

---

[1] The Court will cite to pages of Plaintiff's Complaint rather than paragraph numbers because the paragraphs are inconsistently numbered.

On June 15, 2023, a hearing was held on Defendants' Motion to Dismiss (Dkt. 6). The Court took the matter under advisement. Having considered the parties' written submissions and arguments, this matter is ripe for disposition. For the reasons stated below, the Court grants Defendants' Motion to Dismiss. Dkt. 6.

## I. BACKGROUND

The following facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this Motion:[2]

Plaintiff was a patient at Virginia Hospital Center ("VHC") from at least August 24, 2018 to September 5, 2018, where she received medical care associated with her pregnancy. Compl. at 2, 13–14. At this time, Plaintiff was thirty-five years old and an "African American female and service connected disabled veteran (diagnosed with Traumatic Brain Injury, Post-Traumatic Stress Syndrome, Depression, Anxiety and Panic Attacks)[.]" *Id.* at 13.

On August 24, 2018, Plaintiff's Maternal Fetal Medicine ("MFM") provider and a VHC physician, Dr. Nisha Vayas, sent Plaintiff to VHC's Emergency Labor and Delivery Unit "to resolve [Plaintiff's] pre-term contractions, as well and abdominal and back pain." *Id.*; *see also id.* at 2. Around this time, Plaintiff "still had approximately three and [a] half months" left of her pregnancy. *Id.* at 3–4. While at VHC's Emergency Labor and Delivery Unit on August 24, 2018, "[Plaintiff's] pre-term contractions went untreated" and "a medical student . . . check[ed] [Plaintiff's] cervix without her permission." *Id.* at 13. VHC physicians attending to Plaintiff that day also "did not provide the recommended dosage of Indocin as prescribed by [Dr. Vayas] to stop the pre-term contraction[s.]" *Id.* at 2.

---

[2] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

2

On August 25, 2018, Plaintiff was discharged "without treatment of pre-term contractions and pain." *Id.* at 13. Plaintiff was told to follow up with Dr. Vayas at a regularly scheduled appointment within the next forty-eight hours and "that if [Plaintiff] was to miscarry to do so at home[.]" *Id.* During those forty-eight hours, Plaintiff was "sleepless, ravaged with pain, experiencing pre-term [contractions] . . . as well as[] emotionally injured[.]" *Id.* at 2.

On August 27, 2018, Dr. Vayas "returned [Plaintiff]" to VHC's Emergency Labor and Delivery Unit for treatment. *Id.* at 13. While there, "the staff made it clear that they believed that because of [Plaintiff's] diagnosed emotional conditions, ADA disabilities that limit one or more of her daily activities, that [Plaintiff] was fabricating the seriousness of the contractions and pain." *Id.* at 13–14.

On August 28, 2018, Plaintiff was discharged "after making complaints about the intentional discrimination she and another patient experienced[.]" *Id.* at 14. Specifically, Plaintiff complained that she was not tested for or diagnosed with gestational diabetes "in accord with [Dr. Vayas'" recommendations, Plaintiff had to request a glucose tolerance test, Plaintiff was given cortisone cream, Plaintiff was diagnosed with "Cholestasis by a non-medical doctor without any information on the cause or treatment[,]" and Plaintiff's pre-term contractions and pain were untreated. *Id.* Plaintiff's complaint on behalf of another patient was in reference to an event "she witnessed" during which an "African American VHC phlebotomist [was] traumatizing and being derogatory to a Muslim patient[.]" *Id.* at 4. Plaintiff reported her claims of intentional discrimination to Dr. Saira Mir, an OB/GYN physician at VHC, Dr. Kelly Orzechowski, an MFM physician at VHC, and Kelly White, a VHC business manager. *Id.* at 3, 14. The date on which Plaintiff reported her intentional discrimination claims to VHC is not alleged.

3

Around August or September 2018, "both Dr. Mir and Dr. Orzechowski[] falsified there [sic] medical note to include in accurate [sic] information . . . to support retaliation." *Id.* at 14.

On September 5, 2018, Plaintiff received a dismissal letter, which was dated August 31, 2018. *Id.* The letter informed Plaintiff that "there was no trust between she and . . . the Defendant's [sic] and thus she was being dismissed[.]" *Id.* On September 6, 2018, after arriving for an appointment with Dr. Mir, Plaintiff "was told to go and that her expectation could not be met." *Id.* at 15. On an unknown date, at a previous appointment, "Dr. Mir . . . informed . . . Plaintiff[] [that] she does not take care of veterans or 'Blacks'." *Id.*

On August 29, 2022, Plaintiff filed suit against VHC Health, dba Virginia Hospital Center, and VHC Physician Group, LLC, dba VHC Health Physician/Obgyn. *Id.* at 1. The Complaint alleged violations of the Rehabilitation Act, the ADA, and the ACA due to Defendants' discrimination against Plaintiff Nia Lucas and her minor child, A.M., on the basis of Plaintiff's disability. *Id.* at 16–21. Regarding her discrimination claim, Plaintiff alleges that she "receiv[ed] disparate care from White patients, because of her race and that of her son (African American) and her service-connected disability (PTSD and depression)." *Id.* at 3. Although Plaintiff labels her claim as a "[d]isability [d]iscrimination" claim, *see id.* at 16–17, the Court will construe Plaintiff's discrimination claim as one brought under the bases of race and disability. Although the Complaint is unclear, Plaintiff also appears to allege a violation of the ACA due to Defendants' retaliation. *Id.* at 19–20. Specifically, Plaintiff alleges that "VHC and its physician group retaliated against [Plaintiff] because [of] her complaint of intentional discrimination against her and another patient of color, that was Muslim." *Id.* at 5–6; *see also id.* at 14, 19.

As stated, Defendants moved to dismiss the Complaint. Dkt. 6. In her Opposition, Plaintiff withdrew all claims made on behalf of her minor child. Dkt. 26 at 1. Plaintiff also clarified the

4

claims she was bringing on her own behalf. Specifically, Plaintiff stated that she "perhaps errored when she wrote [C]ount I and II, referencing Title VI, Rehab[ilitation] Act and ADA; when all should have been referred under [Count] III, Violation of the ADA [sic]." *Id.* at 3. The Court believes that Plaintiff intended to write "ACA" instead of "ADA" because in her Complaint, Plaintiff brings Count III pursuant to the ACA. Compl. at 18–19. Plaintiff later stated that "Plaintiff clearly alleges in her Complaint . . . that VHC violated the ACA's nondiscrimination provision, and that she seeks to recover under the ACA." Dkt. 26 at 3. Thus, the Court will construe the Complaint as alleging discrimination and retaliation claims under the ACA alone and not under the Rehabilitation Act or the ADA.

## II.   LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26

(4th Cir. 2009) (alteration in original) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

## III. ANALYSIS

For the sake of completeness, the Court construes Plaintiff's Complaint and Opposition as asserting discrimination and retaliation claims under the ACA. Defendants argue that Plaintiff's claims brought under the ACA fail to state a claim. Dkt. 7 at 7.

### a. Plaintiff Fails to Allege a Discrimination Claim Under the ACA

Section 1557 of the ACA states as follows:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 . . . , title IX of the Education Amendments of 1972 . . . , the Age Discrimination Act of 1975 . . . , or section 794 of title 29 [the Rehabilitation Act], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.] The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).[3]

To state a claim for a Section 1557 violation under the ACA, Plaintiff must allege facts adequate to state a claim under one of the four federal nondiscrimination statutes incorporated into Section 1557. *Basta v. Novant Health Inc.*, 56 F.4th 307, 314–15 (4th Cir. 2022). Because Plaintiff speaks of both race and disability discrimination in her Complaint, the Court will analyze whether Plaintiff has alleged facts adequate to state a claim of race discrimination under Title VI of the Civil Rights Act ("Title VI") and disability discrimination under the Rehabilitation Act.

---

[3] Plaintiff incorrectly states that "[t]he ACA adopts . . . [Americans with Disabilities Act] prohibitions for discrimination[.]" Dkt. 26 at 2; *see also id.* at 4. As seen above, Section 1557 of the ACA only incorporates Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act. 42 U.S.C. § 18116(a).

To state a claim of race discrimination under Title VI, the plaintiff must plausibly allege that the defendant received federal financial assistance and engaged in intentional racial discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

Regarding the receipt of federal financial assistance, Plaintiff pleads that Defendants "receiv[e] federal financial assistance." Compl. at 6; *see also id.* at 16, 19–20.

Regarding intentional racial discrimination, Plaintiff's Complaint speaks to racial discrimination in maternal and infant health care in the American medical system at great length. *Id.* at 8–12. Although racial disparities in the health care system may exist, the Court is bound to examine only the "factual content" in Plaintiff's Complaint "that allows [it] to draw the reasonable inference" that Defendants are liable for discriminating against Plaintiff on the basis of race. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Complaint's factual content concerning racial discrimination is limited to the following: "Defendant's refusal to provide . . . mitigation for pre-term [contractions] and discharge without pain management was based on intentional racism and discrimination." Compl. at 3. Defendants "assumed that, because [Plaintiff] was African American that [Plaintiff] could withstand the contractions and pain[.]" *Id.* at 4. Finally, at an undated medical appointment, one of Defendants' medical providers, Dr. Mir, "informed [] Plaintiff[] [that] she does not take care of veterans or 'Blacks'." *Id.* at 15.

Taking the Complaint as a whole, the Court finds that the Complaint fails to plausibly allege that Defendants engaged in intentional racial discrimination. As an initial matter, Plaintiff's statement that Defendants refused to provide pre-term mitigation due to "intentional racism and discrimination" and assumed that Plaintiff could sustain contractions and pain due to her race are conclusory and speculative. Accordingly, the Court disregards these allegations because such

conclusory statements are "unwarranted inferences" that the Court need not accept as true for purposes of a Rule 12(b)(6) motion. *Wahi*, 562 F.3d at 616 n.26 (quoting *Kloth*, 444 F.3d at 319).

Next, the Complaint contains only a single allegation concerning Defendants' racially discriminatory conduct with respect to Plaintiff: Dr. Mir's statement, which is undated, that "she does not take care of . . . 'Blacks'." Compl. at 15. Even if Plaintiff had alleged the date on which this statement was made, a lone statement of racial animus is not sufficient to plead a plausible claim of race discrimination. *See, e.g., Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 577 (4th Cir. 2017) (affirming dismissal of Title VI discrimination claim where the plaintiff's allegations were limited to one instance in which a "Wells Fargo employee reacted negatively upon learning [the plaintiff's] race"); *McNeal v. Montgomery Cnty.*, 307 F. App'x 766, 774 (4th Cir. 2009) ("To prove discriminatory animus, the derogatory remark cannot be stray or isolated[.]").

Aside from this single statement, the majority of the Complaint's allegations state that Plaintiff's dismissal from receiving Defendants' medical services was a retaliatory act, not a discriminatory act, due to Plaintiff's complaint to Defendants that she and another patient were being discriminated against. *See* Compl. at 4 ("[A]fter her complaint, the Defendant's retaliation, dismissing her . . . ."); *id.* (alleging a "retaliatory dismissal after [Plaintiff's] complaint of the intentional disability discrimination"); *id.* at 5 ("VHC and its physician group retaliated against [Plaintiff] because [of] her complaint of intentional discrimination against her and another patient of color, that was Muslim."); *id.* at 19 ("The Plaintiff[] alleges that the Defendant's intentional discriminat[ion] [was] based on [Plaintiff's] complaint of intentional discrimination retaliated [sic] in dismissing her[.]"); Dkt. 26 at 4 ("The Plaintiff in her Complaint states that she believed that she was a victim of [] Defendants' retaliation . . . as [a] result of [] Plaintiff making a protected

complaint[.]"). By Plaintiff's own admissions, then, Defendants' alleged act of dismissing Plaintiff from receiving further medical services was motivated by complaints she voiced with Defendants, and not because of her race. Accordingly, for all of these reasons, any claim of race discrimination under Section 1557 of the ACA must be dismissed.

Next, the Court turns to Plaintiff's claim of disability discrimination. To state a claim of disability discrimination under the Rehabilitation Act against a private entity which receives federal funds, a plaintiff must show: (1) that she is a "disabled individual" as defined in the Rehabilitation Act; (2) that she is "otherwise qualified" to participate in the offered activity or to enjoy its benefits; (3) that she is "excluded from such participation or enjoyment *solely* by reason of . . . her handicap"; and (4) "that the program administering the activity receives federal financial assistance." *Basta*, 56 F.4th at 315 (emphasis added).

Similar to the race discrimination claim, Plaintiff's disability discrimination claim fails because the Complaint does not plausibly allege that Plaintiff was excluded from Defendants' services and treatment solely by reason of her handicap. On August 27, 2018, Plaintiff alleges that "the staff made it clear that they believed that because of [Plaintiff's] diagnosed emotional conditions . . . that [Plaintiff] was fabricating the seriousness of the contractions and pain." Compl. at 13–14. The Complaint alleges that Plaintiff was discharged on August 28, 2018, "after making complaints about the intentional discrimination she and another patient experienced . . . because of their potential race, ethnicity, disability and religion[.]" *Id.* at 14. On September 5, 2018, Plaintiff received a dismissal letter from Defendants, stating that "there was no trust between" Plaintiff and at least one of Defendants' medical providers and that Plaintiff "was being dismissed[.]" *Id.* Thus, it is clear based on the facts that Plaintiff alleges that her disability was

9

not the *sole* reason that she was excluded from services. Thus, the disability discrimination must also be dismissed.

### b. Plaintiff Fails to Allege a Retaliation Claim Under the ACA

Plaintiff brings a retaliation claim under the ACA, alleging that Defendants "retaliated against [Plaintiff] because [of] her complaint of intentional discrimination against her and another patient of color, that was Muslim." *Id.* at 5; *see also id.* at 3. Defendants argue that Plaintiff fails to state such a claim because the available case law only supports a retaliation claim alleged by an employee against an employer. Dkt. 15 at 6. The Court agrees.

The Court is unaware of any case law that supports an independent cause of action under Section 1557 of the ACA for retaliation. In addition, retaliation claims brought under Section 504 of the Rehabilitation Act, one of the federal statutes incorporated into the ACA, can only be brought in the employment context. *See, e.g., S.B. ex rel A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78–79 (4th Cir. 2016) (addressing a retaliation claim under Section 504 of the Rehabilitation Act in the employment context). "Absent direct evidence of retaliation," to state a *prima facie* claim of retaliation under Section 504 of the Rehabilitation Act, a plaintiff must allege that: (1) she "engaged in protected activity"; (2) the defendant "took an adverse action against" her; and (3) "the adverse action was causally connected to [the] protected activity." *Id.* at 78. Regarding the third element of a retaliation claim, adverse actions "cover[] those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).[4] Because Plaintiff

---

[4] Although *Burlington* concerns a retaliation claim brought under Title VII of the Civil Rights Act of 1964, *see* 548 U.S. at 56, the Fourth Circuit has consistently required the same *prima facie* standard for retaliation claims under both Title VII and the Rehabilitation Act. *See, e.g., Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 & n.9 (4th Cir. 2017).

does not allege that she is an employee or job applicant of either Defendant, the Court must dismiss the retaliation claim brought under the ACA for failure to state a claim.

The Court finds that further amendment of the Complaint would be futile because no amendment can cure the discussed deficiencies. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming dismissal with prejudice under Rule 12(b)(6) where "amendment would be futile in light of the fundamental deficiencies in [P]laintiffs' theory"). Thus, Plaintiff's claims are dismissed with prejudice. For the above stated reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 6) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Motion for Leave of Court to E-File Filings Via Nextgen CM/ECF (Dk. 31), Plaintiff's Motion for Leave to File Under Seal and Redact Medical Information in Complaint Filed August 24, 2023 (Dkt. 32), and Plaintiff's Motion for Leave to Amend Complaint (Dkt. 33) are all **DENIED** as **MOOT**.

The Clerk is directed to send a copy of this Order to Plaintiff.

Entered this 30th day of August, 2023
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge